UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| TARA NICOLE LINK, ) | Case No. 14-46466-705 |
| ) | Chief Judge Kathy A. Surratt-States |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| LARRY BROWN, and ) | **Adversary No. 15-4033-659** |
| LISA BROWN, ) | |
| ) | **PUBLISHED** |
| Plaintiffs ) | |
| ) | |
| -v- ) | |
| ) | |
| TARA NICOLE LINK, and ) | |
| CAROLINE N. LABRAYERE, ) | |
| ) | |
| Defendants ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is the Complaint to Determine Dischargeability of Debt and Answer to Complaint. A hearing was held on June 23, 2015, at which Plaintiffs Larry Brown and Lisa Brown appeared in person and by counsel. Debtor/Defendant Tara Nicole Link and Defendant Caroline N. Labrayere also appeared in person and by counsel. Testimony and argument were presented, evidence was admitted, and the matter was taken under submission. Upon a consideration of the record as a whole, the Court rules as follows.

## FINDINGS OF FACT

Caroline N. Labrayere (hereinafter "Ms. Labrayere") operated an unincorporated family restaurant business called The White Grill (hereinafter "Restaurant") for approximately 17 years with her ex-husband Michael Labrayere. Upon encountering some financial difficulty in 2012, Ms. Labrayere decided to sell the Restaurant. At that time, she was contemplating filing bankruptcy. Ultimately, Ms. Labrayere decided to sell the Restaurant to her daughter, Debtor/Defendant Tara

Nicole Link (hereinafter "Ms. Link") for a sufficient amount to satisfy at least Ms. Labrayere's immediate financial needs which were to pay the Restaurant's sales taxes due to the Missouri Department of Revenue in the amount of $2,038.66 and to pay Ms. Labrayere's impending bankruptcy attorney fees in the amount of $957.00. Ms. Link did not have any funds to pay Ms. Labrayere, but sought the financial assistance of Plaintiff Lisa Brown (hereinafter Ms. Brown). At that time, Ms. Brown and Ms. Labrayere enjoyed a long-standing friendship; Ms. Brown is the godmother of Ms. Link.

Ms. Brown had $10,000.00 invested in bonds at Edward Jones, which yielded annual interest of 6.6%. Following consultation with her husband, Plaintiff Larry Brown (hereinafter "Mr. Brown"), Ms. Brown decided to liquidate these bonds and loan the proceeds to Ms. Link, which Ms. Link would in turn use to pay her mother, Ms. Labrayere, for the Restaurant. Because of a delay between the date of Ms. Brown's attempt to liquidate the bonds and when she would obtain the proceeds, Ms. Brown contacted her aunt, Carol Cook (hereinafter "Ms. Cook") to borrow $10,000.00, to be repaid by Ms. Brown upon receipt of the proceeds from Edward Jones. Ms. Brown received the $10,000.00 loan from Ms. Cook in the form of a cashiers check.

On September 20, 2012, Ms. Brown, Ms. Labrayere and Ms. Link proceeded to a local PNC Bank and learned that there would be a hold placed on the deposit of the cashiers check received from Ms. Cook. Ms. Brown contacted Ms. Cook and obtained confirmation that there would not be a hold placed on the cashiers check she provided if it were cashed at the bank where the cashiers check was drawn, First Midwest Bank, which is located in Piedmont, Missouri. Ms. Cook also confirmed that there would not be a charge if the proceeds of the cashiers check were used to create other cashiers checks.

Ms. Brown, Ms. Labrayere and Ms. Link then drove to the First Midwest Bank location in Piedmont, Missouri. Ms. Brown presented the cashiers check given to her by Ms. Cook, and in return, at Ms. Brown's request, Ms. Brown was provided with: (1) a cashiers check made payable

-2-

to the Missouri Department of Revenue in the amount of $2,038.66, Remitter: Carol Labrayere (hereinafter "Labrayere Cashiers Check"); (2) a cashiers check made payable to the Missouri Department of Revenue in the amount of $1,200.00, Remitter: Tara Link (hereinafter "Link Cashiers Check"); and (3) cash in the amount of $6,761.34 (hereinafter "Cash").  Upon receipt, or shortly thereafter, Ms. Brown loaned Ms. Link $10,000.00 through delivery by Ms. Brown to Ms. Link of: the Labrayere Cashiers Check, the Link Cashiers Check and the Cash (hereinafter collectively the "Loan"); delivery was witnessed by Ms. Cook outside of First Midwest Bank.  Ms. Link then delivered at least the Labrayere Cashiers Check to Ms. Labrayere.  There is no dispute that Ms. Labrayere and Ms. Link expressed an intent, to both Ms. Brown and Ms. Cook, to ensure that Ms. Brown was repaid for the Loan.  Ms. Brown repaid Ms. Cook for the $10,000.00 loan used to obtain the Labrayere Cashers Check, the Link Cashiers Check and the Cash.

Ms. Brown, Ms. Labrayere and Ms. Link immediately proceeded to the Missouri Department of Revenue where Ms. Labrayere tendered the Labrayere Cashiers Check to pay sales taxes due for the Restaurant.  Ms. Labrayere testified that the amount due for the Restaurant's sales taxes were determined at the end of the month and for this reason, she knew exactly how much she needed to pay the Missouri Department of Revenue.  Ms. Link then tendered the Link Cashiers Check to pay the required bond for prospective sales taxes, which was required for Ms. Link to take-over and purchase the Restaurant.

On September 25, 2012, Ms. Labrayere filed a Voluntary Petition under Chapter 7[1] of the Bankruptcy Code.[2]  Ms. Brown was aware of Ms. Labrayere's intention to seek bankruptcy protection at the time she made the Loan to Ms. Link.  Ms. Brown did not consult an attorney about the implications of Ms. Labrayere's bankruptcy filing, if any, on the Loan to Ms. Link, or repayment

---

[1] Case Number 12-49555.

[2] Ms. Labrayere previously filed a Voluntary Joint Petition with her now ex-husband under Chapter 13 of the Bankruptcy Code on April 16, 2009. Case Number 09-43464.

-3-

thereof.[3]  Ms. Brown did not receive notice from the Bankruptcy Court of Ms. Labrayere's bankruptcy filing, nor was she listed as a creditor in Ms. Labrayere's schedules.

At least $957.00 of the Cash was paid by Ms. Link to Ms. Labrayere, which Ms. Labrayere in turn used to pay her bankruptcy attorney fees.  The use of the remaining Cash is unclear.

Operation of the Restaurant by Ms. Labrayere continued, even after the sale to Ms. Link. Notable changes however were that insurance was purchased, for which the loss-payees were Ms. Brown and Ms. Link.  Ms. Brown was granted access to a Restaurant bank account, through which the trash, electricity, gas and phone bills (hereinafter collectively "Utilities") were paid.  At the time of the change of ownership from Ms. Labrayere to Ms. Link, for reasons that are either unclear or irrelevant, the Utilities were placed in the name of Ms. Brown.  It became the ordinary course of business for Ms. Link to provide Ms. Brown with the cash equivalent of the monthly bills for the Utilities, Ms. Brown would deposit the cash into the Restaurant bank account she had access to, and Ms. Brown would pay the corresponding bills.  Also at some point, Ms. Brown and Ms. Link agreed to pay the Restaurant's rent through that same bank account.  Further, at some point, Ms. Brown and Mr. Brown purchased a coffee pot, a freezer and a cold table for the restaurant.

Ultimately the relationship between Ms. Brown, Ms. Labrayere and Ms. Link soured.  Ms. Brown was informally banned by Ms. Labrayere and Ms. Link from returning to the Restaurant.  Ms. Brown and Mr. Brown filed suit against Ms. Link only, in the Associate Circuit Court for Jefferson County, Missouri for repayment of the Loan.  After a bench trial, on June 25, 2014, judgment was entered in that lawsuit in favor of Ms. Brown and Mr. Brown, and against Ms. Link, in the amount $10,000.00 for the Loan, less the value of property received by Ms. Brown and Mr. Brown, less costs incurred by Ms. Link to repair damage caused by the unauthorized entry of Ms. Brown on the premises of the Restaurant, less funds withdrawn by Ms. Brown from the Restaurant bank account

---

[3]Ms. Brown and Mr. Brown testified that they believe the Loan was made to both Ms. Link and Ms. Labrayere, however, for reasons discussed below, this belief is irrelevant at this time.

without sufficient justification or authorization, and less damage caused by Ms. Brown's unauthorized appropriation of business records, for a final Judgment in the amount of $4,898.32 (hereinafter "State Court Judgment").

Ms. Link filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on August 16, 2014. Ms. Brown and Mr. Brown have commenced this adversary for a determination that the State Court Judgment is nondischargeable pursuant to Sections 523(a)(2)(A), (a)(3) and (a)(14A). Ms. Brown and Mr. Brown argue that neither Ms. Labrayere nor Ms. Link had any intention on repaying the Loan, that no notice of either Ms. Labrayere or Ms. Link's respective bankruptcies was provided nor were Ms. Brown and Mr. Brown listed as creditors in their respective bankruptcy cases, and that the Loan was incurred to pay taxes.

Ms. Link challenges the applicability of Section 523(a)(14A) because she does not believe the Loan can be traced to taxes. Further, because the State Court Judgement is silent as to the application of the amounts used to reduce the $10,000.00 award, Ms. Link effectively argues that the Loan should be viewed as three loans in which the tax debt has priority, and that the reduction amounts of the State Court Judgment should be applied to the tax debt such that those two loans be deemed satisfied, and the remaining sum be deemed dischargeable. Alternatively, Ms. Link argues that the reduction amounts should be applied proportionally between each of the hypothetical three loans.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2015) and Local Rule 81-9.01 (B) of the United States District Court for the Eastern District of Missouri. This is a core and related proceeding under 28 U.S.C. § 157(b)(2)(A) and (I) (2015). Venue is proper in this District under 28 U.S.C. § 1409(a) (2015).

**CONCLUSIONS OF LAW**

The Court must determine if the State Court Judgment should be excepted from discharge under Section 523(a)(2)(A) as a debt incurred by false pretenses, false representation and actual fraud, under Section 523(a)(3)(A) as an unlisted debt or under Section 523(a)(14A)[4] as a debt incurred to pay a tax. Ms. Brown and Mr. Brown also requests attorneys fees. If the Court determines that the State Court Judgment should be excepted from discharge, Ms. Link requests that the Court determine whether the award contained in the State Court Judgement is for the portion of the Loan used to pay the Missouri Department of Revenue, the Cash portion of the Loan, or a hybrid of the two; based on this determination, the State Court Judgment could effectively be dischargeable, or dischargeable-in-part.

At the outset, there is no dispute that Ms. Brown and Mr. Brown were aware of Ms. Labrayere's bankruptcy filing, yet, they chose not to participate in that case. In any event, the State Court Judgment, which is the only debt before this Court, is owed only by Ms. Link to Ms. Brown and Mr. Brown. Ms. Labrayere has no present liability to Ms. Brown and Mr. Brown with respect to the State Court Judgment. Ms. Brown and Mr. Brown may explore whatever recourse through whatever means they deem appropriate directly against Ms. Labrayere, however, this Court is bound by both the confines of the State Court Judgment and the laws of jurisdiction to consider only Ms. Link as the liable party, and will proceed accordingly.

**Section 523(a)(2)(A)**

Section 523(a)(2)(A) states that a debtor is not entitled to discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the

---

[4] Ms. Brown and Mr. Brown also proceed under Section 523(a)(14). Complaint to Determine Dischargeability of Debt, at ¶ 13. The only tax debt in this adversary is the debt paid to the Missouri Department of Revenue which cannot be deemed a tax owed to the United States, as such, Section 523(a)(14) is not at all relevant and will not be further addressed by the Court.

-6-

debtor's or an insider's financial condition...." 11 U.S.C. § 523(a)(2)(A) (2014).  To prevail under Section 523(a)(2)(A), a plaintiff must prove by a preponderance of the evidence that:

> 1. The debtor made a representation.
> 2. The debtor knew the representation was false at the time is was made.
> 3. The representation was deliberately made for the purpose of deceiving the creditor.
> 4. The creditor justifiably relied on the representation.
> 5. The creditor sustained the alleged loss as the proximate result of the representation having been made.

*In re Maurer,* 256 B.R. 495, 500 (B.A.P. 8th Cir 2000) (citations omitted);  *In re Blair*, 324 B.R. 725, 729 (Bankr. W.D. Ark. 2005) (citing *In re Moen,* 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999)); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  "A false pretense involves implied misrepresentation or conduct intended to create and foster a false impression." *In re Moen,* 238 B.R. at 791 (quoting *In re Guy,* 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the false pretenses provision of Section 523(a)(2)(A)." *Id.* (quoting *In re Malcolm,* 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)).

Ms. Brown essentially argues that the Loan was procured by fraud because Ms. Link had no intention on repaying the Loan, nor did Ms. Labrayere have any intention on repaying the Loan on behalf of Ms. Link.  Therefore, the false representation was that the Loan would be repaid.  At the time the Loan was made, the evidence and testimony support the conclusion that Ms. Brown, Ms. Labrayere and Ms. Link were good friends.  Ms. Labrayere was in a financial bind and Ms. Brown wanted to be of assistance.  Intent to repay Ms. Brown was expressed on numerous occasions, and no party has presented this Court with any basis to believe anything to the contrary.  Rather, as the relationship between Ms. Brown, Ms. Labrayere and Ms. Link soured, attitudes changed and ultimately, this adversary was commenced.  The relevant point of inquiry is the intent

of the parties at the time the Loan was made. At the time the Loan was made, the Court concludes that every representation made to Ms. Brown by Ms. Link and by Ms. Labrayere, was true, to the inclusion of the intent to repay Ms. Brown. As such, there is no basis for this Court to conclude that the State Court Judgment should be excepted from discharge for fraud pursuant to Section 523(a)(2)(A).

**Section 523(a)(3)**

Section 523(a)(3) states an exception from discharge for a debt that was:

> neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit –
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, *unless such creditor had notice or actual knowledge of the case in time for such timely filing*; or
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual notice of the case in time for such timely filing and request.*

11 U.S.C. § 523(a)(3) (2015) (emphasis added).

As stated earlier, Ms. Brown and Mr. Brown were aware of Ms. Labrayer's bankruptcy filing. And as is quite evident, Ms. Brown and Mr. Brown had actual knowledge of Ms. Link's bankruptcy filing and commenced the subject adversary proceeding. As such, this actual knowledge precludes a favorable determination for Ms. Brown and Mr. Brown under Section 523(a)(3). Thus the Court concludes that the State Court Judgment should not be excepted from discharge under Section 523(a)(3).

**Section 523(a)(14A)**

Under Section 523(a)(14A), a Chapter 7 discharge does not discharge a debt "incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1)". 11 U.S.C. § 523(a)(14A) (2015). Section 523(a)(1) excepts from discharge

a debt for a tax described in Section 507(a)(8). 11 U.S.C. § 523(a)(1) (2015). Section 507(a)(8) describes claims of governmental units for a tax which was last due, including extensions, within three years of the date of filing the bankruptcy petition, 11 U.S.C. § 507(a)(8)(A)(I) (2015), and "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(8)(C) (2015). Further, Section 523(a)(7) states that any debt owed to a governmental unit for a tax that was finally assessed within three years of the date of filing of the bankruptcy petition may be excepted from discharge. 11 U.S.C. § 523(a)(7) (2015); 11 U.S.C. § 507(a)(8)(A)(i); *In re Bisch,* 437 B.R. 359, 361-62 (Bankr. E.D. Mo. 2010).

Congress enacted Section 523(a)(14) in 1994 and Section 523(a)(14A) in 2005 to address the dischargeability of loans that were incurred to pay nondischargeable taxes and thus avoid the substitution of a nondischargeable debt, the taxes, for a dischargeable debt, the loan. *Van Dyn Hoven v. Bank of Kaukauna,* 470 B.R. 822, 825 (E.D. Wis. 2012) (citation omitted); *In re Gavin,* 248 B.R. 464, 465 (Bankr. M.D. Fla. 2000). A creditor must show that: (1) the debt was incurred to pay a tax; and (2) had the tax not been paid, the tax debt could have been deemed nondischargeable. *Van Dyn Hoven,* 470 B.R. at 828 (citing *In re Dinan,* 425 B.R. 583, 586 (Bankr. D. Nev. 2010), *In re Barton,* 321 B.R. 877, 879 (Bankr. N.D. Ohio 2005)). The burden of proof lies with the creditor to "establish by a preponderance of the evidence that his [or her] claim is not dischargeable." *Grogan v. Garner,* 498 U.S. 279, 287-88, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991).

<u>*The Labrayere Cashiers Check*</u>

Neither Ms. Brown nor Ms. Link have presented this Court with evidence of exactly when taxes satisfied by the Labrayere Cashiers Check were due or whether those taxes would have been dischargeable. Nevertheless, based in large part on Ms. Labrayere's testimony, it is evident that before Ms. Link could purchase the Restaurant, the sales taxes needed to be paid. Ms. Labrayere also testified that the sales taxes due were determined at the end of the month. Accepting Ms.

Labrayere's testimony as true, the Court concludes that the sales taxes were likely due as early as August 31, 2012, the end of the last complete month before Ms. Link purchased the Restaurant. Therefore, the sales taxes would have been nondischargeable if challenged in Ms. Labrayere's Chapter 7 case.[5] The Court reaches this conclusion because Section 523(a)(1) only instructs that the taxes need not be dischargeable, but is silent as to the particular bankruptcy case in which those taxes need not be dischargeable. As such, the sales taxes, which were satisfied by the Labrayere Cashiers Check, constitutes a tax debt described under Section 507(a)(8), and therefore Section 523(a)(1), and is consequently nondischargeable under Section 523(a)(14A).

It is also evident from Ms. Labrayere and Ms. Brown's testimony that Ms. Link, as purchaser of the Restaurant, incurred debt with Ms. Brown to pay the sales tax of the Restaurant as consideration for her purchase of the Restaurant. As such, by agreeing to purchase the restaurant for at least the amount due to the Missouri Department of Revenue for the restaurant's sales taxes and the amount due by Ms. Labrayere to her bankruptcy attorney, Ms. Link became liable in her capacity as purchaser of the Restaurant to provide to Ms. Labrayere the funds to pay the Restaurant's sales taxes. The Loan to Ms. Link was comprised of (1) the Labrayere Cashiers Check in the amount of $2,038.66, (2) the Link Cashiers Check in the amount of $1,200.00 and (3) Cash in the amount of $6,761.34, and Ms. Link's liability for the Loan has already be determined by the Associate Circuit Court for Jefferson County, Missouri, per the State Court Judgment. As such, the principle of *res judicata* controls. It having already been determined that Ms. Link is liable for the Labrayere Cashiers Check, and there being no dispute that the Labrayere Cashiers Check was obtained by Ms. Link from Ms. Brown and immediately used to pay sales taxes for the Restaurant that Ms. Link purchased that same day, the Court concludes that the portion of the

---

[5] Had Ms. Link assumed this same liability, to the extent such an assumption is possible, the Court concludes that August 31, 2012 is within 3 years of August 14, 2014, the date of Ms. Link's Chapter 7 filing, and as such, the taxes would hypothetically have been nondischargeable in Ms. Link's Chapter 7 case as well.

Loan comprised of the Labrayere Cashiers Check is also sufficiently traceable to a tax required to be collected for which Ms. Link was liable in some capacity pursuant to Section 507(a)(8)(C). Therefore, the Restaurant's outstanding sales taxes is a tax of the kind described by Section 523(a)(1)(A), and as such, may be excepted from discharge under Section 523(a)(14A). This conclusion is particularly aided by the fact that the Loan itself comprised of the Labrayere Cashiers Check which was payable to the Missouri Department of Revenue, and that Ms. Link was already deemed liable for repayment of the Labrayere Cashiers Check under the State Court Judgment.

*The Link Cashiers Check*

Likewise, the Court concludes under the sufficiently similar reasoning that the Link Cashiers Check was obtained through the Loan to pay "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity" pursuant to Section 507(a)(8)(C) because Ms. Link was required, as purchaser of the Restaurant, to pay the $1,200.00 bond for prospective sales taxes, and the Missouri Department of Revenue was required to collect and withhold the $1,200.00 bond for prospective sales taxes for the Restaurant to continue operations under Ms. Link's ownership. Ms. Link was liable for the bond for the Restaurant's sales taxes in some capacity pursuant to Section 507(a)(8)(C), which is a tax of the kind described by Section 523(a)(1)(A), and as such, may be excepted from discharge under Section 523(a)(14A). This result conforms with the purpose of Section 523(a)(14A) which is to curtail a debtor from the substitution of nondischargeable tax debt for a dischargeable unsecured loan.

The Court declines to consider the sums reduced in the State Court Judgment to have satisfied the portion of the Loan comprised of the Labrayere Cashiers Check and the Link Cashiers Check because there is no basis for this Court to bifurcate the State Court Judgment as requested by Ms. Link. As a practical matter however, even if the Court were to entertain such a task, the Court would be inclined to apply the reductions to the 'Cash' portion of the $10,000.00 award, as

this would be consistent with analogous precedent in analogous contexts in bankruptcy law. *Cf. In re Machinery, Inc.,* 287 B.R. 755, 762-63 (Bankr. E.D. Mo. 2002); *In re Veeco Inv. Co.,L.P.,* 170 B.R. 149, 151-52 (Bankr. E.D. Mo. 1994) (applying the "addition theory" whereby the unsecured portion of a claim is satisfied before payments are applied to the secured portion of a claim).

Thus the Court concludes that the State Court Judgment will be excepted from discharge in the amount of $2,038.66 for the Labrayere Cashiers Check and in the amount of $1,200.00 for the Link Cashiers Check.

**<u>Attorneys Fees</u>**

Finally, Ms. Brown makes a request for attorneys fees which is governed by Federal Rule of Bankruptcy Procedure 7054.[6]  Any exception from discharge of a debt under Section 523(a) may include attorney's fees and costs in that the same constitutes "any debt" that arises from the misconduct. *Cohen v. de la Cruz,* 523 U.S. 213, 223, 118 S.Ct. 1212, 1219, 140 L.Ed.2d 341(1998).  Rule 54(d)(2) of the Federal Rules of Civil Procedure, as made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7054 provides that a motion for attorney's fees may be made unless "substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A) (2015); Fed. R. Bankr. P. 7054(b)(2)(A) (2015).  The party seeking attorney's fees must describe the grounds for the award.  Fed. R. Civ. P. 54(d)(2)(B)(ii) (2015); Fed. R. Bankr. P. 7054 (2015).

"[N]ormally, attorney's fees are not awarded, absent clear statutory authority or unusual circumstances." *U.S. v. Mexico Feed and Seed Co., Inc.,* 980 F.2d 478, 490 (8th Cir.1992) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 249–50, 95 S.Ct. 1612, 1617–18, 44 L.Ed.2d 141 (1975)).  "In the United States the parties to litigation generally bear the cost of their own attorney's fees. Under this 'American Rule' it is improper to award attorney's fees incurred

---

[6]Ms. Brown cites Federal Rule of Bankruptcy Procedure 7008 which pertains to pleading requirements.  Complaint to Determine Dischargeability of Debt, at ¶ 27.

in litigation unless the right to such fees is set by statute or awarded by contract." *In re Nangle,* 281 B.R. 654, 657 (B.A.P. 8th Cir. 2002) (emphasis in original) (citations omitted). If the movant fails to describe the basis for an award of attorney's fees, such request should be denied. *See In re Keogh,* 509 B.R. 915, 943-944 (Bankr. E.D. Mo. 2014). Ms. Brown does not provide the Court with any grounds for an award of attorney's fees. The Court is therefore not presented with basis to depart from the American Rule and the request for attorneys fees will be denied.

By separate Order, the State Court Judgment in the amount of $2,038.66 for the Labaryere Cashiers Check and in the amount of $1,200.00 for the Link Cashiers Check, for a total amount of $3,238.66 will be declared nondischargeable.

*/s/ Kathy A. Surratt-States*
KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: September 25, 2015
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Tara Nicole Link
220 A. E. Main Street
Festus, MO 63028

Adam Grissom Breeze
Zimmer Breeze, LLC
508 North Truman Boulevard Suite E
Crystal City, MO 63019

Adam C Renner
Thurman Law Firm
301 Main Street
Hillsboro, MO 63028

Caroline N LaBrayere
100 Bonnie Lane
Festus, MO 63028